[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR PREJUDGMENT REMEDY (No. 105)
Presently before the court is the plaintiff, Joseph Dornfried's (plaintiff or Dornfried) motion for prejudgment remedy against defendants Michael Granquist (Granquist) and Prestige Kitchens, LLC, dated January 19, 2001. On February 26, 2001, the court held a hearing in connection with the motion, at which the parties were present and represented by counsel. The court heard testimony and various exhibits were admitted into evidence. Dornfried filed a posthearing memorandum of law, dated March 2, 2001; the defendants filed a memorandum of law, dated March 9, 2001. For the reasons stated below, the court grants the motion in part and denies it in part.
 BACKGROUND
This case arises from a written contract, dated January 30, 1999, concerning the installation of a kitchen at the plaintiff's residence. Dornfried alleges, in his four count complaint, dated June 12, 2000, that both defendants are liable to him for breach of contract, as a result of incomplete and defective work. (Complaint, first count). In paragraph 3, he alleges that "`Prestige Kitchens' is a trade name through which Granquist does business. Subsequent to using the name as a trade name, Granquist created a limited liability company using the same name, `Prestige Kitchens, LLC' (`Prestige Kitchens')." (Complaint, first count, ¶ 3) In the second count, based on claimed negligence, Dornfried asserts that the defendants breached their duty to perform the work required by the contract in a professional, workmanlike and timely manner. (Complaint, second count, ¶¶ 5-11)
In the third count, entitled "(Fraud)," the plaintiff alleges that, when the contract terms were negotiated, the defendants made specific representations about the types and quality of materials that would be CT Page 3546 used. (Complaint, third count, ¶ 11) "These included discussions that the materials would be "custom made' for Dornfried's kitchen and would be made from quality hardwoods suitable for cabinetry, such as maple." (Complaint, third count, ¶ 11) The plaintiff alleges further that, at the time these representations were made, the defendants "knew or should have known that they could not provide these materials and workmanship." (Complaint, third count, ¶ 13) The complaint also alleges that cabinets of quality hardwoods and custom cabinets were not produced. (Complaint, third count, ¶ 14)
Finally, in the fourth count, the allegations of the third count are realleged and reincorporated, and the plaintiff pleads that these same acts constitute unfair and deceptive trade practices in violation of the Connecticut Unfair Trade Practices Act, General Statutes §§ 42-110b et seq. (CUTPA). (Complaint, fourth count, ¶ 17) In his prayer for relief, the plaintiff seeks money damages, punitive damages, and attorneys' fees.
 STANDARD OF REVIEW
"The language of our prejudgment remedy statutes; General Statutes52-278a et seq.; requires that the court determine whether or not there is probable cause to sustain the validity of the plaintiff's claim; General Statutes 52-278d (a); that is to say probable cause that judgment will be rendered in the matter in favor of the plaintiff. General Statutes 52-278c (a)(2). The legal idea of probable cause is a bonafide
belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. [Emphasis in original.]. Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false." (Internal quotation marks and citations omitted.) Three S DevelopmentCo. v. Santore, 193 Conn. 174, 175, 474 A.2d 795 (1984).
At the prejudgment remedy hearing, the defendant is afforded the opportunity to be heard. "[T]he showing of a clear, factually and legally simple defense. . . . may be enough to show a lack of probable cause for the validity of a plaintiff's claim." Babiarz v. Hartford Special, Inc.,2 Conn. App. 388, 393, 480 A.2d 561 (1984). The court "must determine, in light of its assessment of the Legal issues and the credibility of the witnesses, whether a plaintiff has sustained the burden of showing probable cause to sustain the validity of its claim." Nash v. Weed Duryea Co., 236 Conn. 746, 749, 674 A.2d 849 (1996). The trial court has a "broad discretion to deny or grant a prejudgment remedy." (Internal quotation marks omitted.) Micci v. Thomas, 55 Conn. App. 14, 16,738 A.2d 219 (1999). CT Page 3547
 DISCUSSION I. Liability under the Contract
In his memorandum (and at the hearing), Dornfried contends that when he signed the contract, he believed he was entering into a contract with Granquist as an individual, not with Prestige Kitchens, LLC, a limited liability company. (Plaintiff's Memo., p. 4) He argues that `[t]he only evidence suggesting that Dornfried had contracted with a limited liability company was an isolated label found on the top of Exhibit 1, mentioning "Prestige Kitchens, LLC." (Plaintiff's Memo., p. 5.) Plaintiff asserts also that the text of the contract does not refer to a limited liability company and that "the signature caption appears to be executed by Granquist in an individual, not representative, capacity. He is not styled in the caption as a `Member' of the limited liability company, but is rather referenced as a `Manager,' a term that bears no special connotation for the limited liability form of conducting business." Plaintiff's Memorandum, p. 5.
"Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) Tallmadge v. Iroquois GasTransmission System, 252 Conn. 479, 495, 746 A.2d 1277 (2000). Our Supreme Court reiterated, in Tallmadge, that "[a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) Id., 498. Moreover, "[e]specially in the context of commercial contracts, we assume that definite contract language is the best indication of the result anticipated by the parties in their contractual arrangements." Id., 500.
"Contract language is unambiguous when it has a `definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion. . . .'" (Citations omitted.) Levine v. Advest,Inc., 244 Conn. 732, 746, 714 A.2d 649 (1998). "The rules of construction are applied only if the language of the contract is ambiguous, uncertain or susceptible of more than one construction." Id. Also, parties are presumed to have contracted with reference to existing law. See BradleyFacilities, Inc. v. Burns, 209 Conn. 480, 491, 551 A.2d 746 (1988), cert. denied, 493 U.S. 810, 110 S.Ct. 54, 107 L.Ed.2d 23 (1989).
"The law is settled that where an agent contracts in his own name, CT Page 3548 without disclosing his representative capacity, the agent is personally liable on the contract." Murphy v. Dell Corporation, 184 Conn. 581, 582,440 A.2d 223 (1981). In this case, the parties' contract clearly establishes that Granquist signed on behalf of Prestige Kitchens, LLC, a limited liability company. "The Connecticut Limited Liability Company Act, General Statutes §§ 34-100 to 34-242, inclusive, was adopted in 1993 and is generally similar to the model act promulgated in 1995 by the Uniform Laws Commissioners. The allure of the limited liability company is its unique ability to bring together in a single business organization the best features of all other business forms — properly structured, its owners obtain both a corporate-styled liability shield and the pass-through tax benefits of a partnership. Unif. Limited Liability Company Act, prefatory note, 6A U.L.A. 426 (1995)." (Internal quotation marks omitted.) PB Real Estate, Inc. v. DEM II Properties,50 Conn. App. 741, 742, 719 A.2d 73 (1998).
The contract, Plaintiff's Exhibit 1, at page 1, states, on its first line, in capital letters, "PRESTIGE KITCHENS, LLC," and then lists the business address and phone number. The use of the common form of abbreviation for a limited liability company, "LLC," is prominently displayed, and discloses the identity of the contracting entity as a limited liability company. See General Statutes § 34-102, which states that the name of each limited liability company must contain those words or "the abbreviations `L.L.C.' or `LLC.'"
Contrary to plaintiff's argument, the signature by Granquist, as "Manager," does have a special connotation bearing a direct relationship to the statutes governing limited liability companies. Those statutes contain numerous references to the term "manager." For example, under the definitional section, General Statutes § 34-101 (12), "manager" means a "with respect to a limited liability company that has set forth in its articles of organization that it is to be managed by managers, the person or person designated in accordance with section 34-140." General Statutes § 34-140 (c) provides, in pertinent part, that a limited liability company may include in its operating agreement that management of the entity may be "vested in a manager or managers." General Statutes §34-130 (b) provides that, where a limited liability company has vested management in a manager, "every manager is an agent of the limited liability company for the purpose of its of its business or affairs. . . ."
Concerning the liability of managers to third parties, such as Dornfried, § 34-133 (a) states that "[e]xcept as provided in subsection (b) of this section [concerning the provision of "professional services" not applicable to the business relationship at issue here] a person who is a member or manager of a limited liability company is not CT Page 3549 liable, solely by reason of being a member or manager, under a judgment, decree or order of a court, or in any other manner, for a debt, obligation or liability of the limited liability company, whether arising in contract, tort or otherwise or for the acts or omissions of any other member, manager, agent, or employee of the limited liability company."
Thus, Granquist's signature as "Manager" of Prestige Kitchens is another significant indicator that the contract was entered into between a limited liability company, Prestige Kitchens, LLC, and Dornfried. The fact that, in advance of entering into the contract, Granquist provided to Dornfried an old business card which listed his business without the "LLC" designation, and the fact that Dornfried learned that Granquist had registered a trade name, "Prestige Kitchen Tile," in the town of Bristol, see Plaintiff's Memo., p. 2, do not negate the plain meaning of the parties' agreement.
The contract is clear and unambiguous. After defining the contracting entity as a limited liability company on the first page through the "LLC" designation, the contract simply references "Prestige Kitchens" thereafter. Then, Granquist signed as "manager," reiterating that the limited liability form of business was being utilized. The evidence before the court, at this stage of the proceeding, establishes that the parties to the contract were Prestige Kitchens, LLC and the plaintiff. Under these circumstances, there is no probable cause to believe that the plaintiff entered into the contract with Granquist as an individual.
The plaintiff also claims that the "Granquist is personally liable to Dornfried for the complained-of acts, because the Court should disregard the shield of his limited liability company." (Plaintiff's Memo., p. 5) He urges the court to do so by piercing the veil of the entity via either the instrumentality rule or the identity rule. (Plaintiff's Memo., pp. 5-12) However, since the complaint does not plead either piercing theory, the court may not consider them.
"Pleadings have their place in our system of jurisprudence. While they are not held to the strict and artificial standard that once prevailed, we still cling to the belief, even in these iconoclastic days, that no orderly administration of justice is possible without them. . . . The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. . . . It is fundamental in our law that the right of a [party] to recover is limited to the allegations in his complaint. . . . A [party] may not allege one cause of action and recover on another. Facts found but not averred cannot be made the basis for a recovery. . . . The court is not permitted to decide issues outside of those raised in the pleadings." (Internal quotation marks and citation omitted.) Yellow Page Consultants v. Omni Home HealthCT Page 3550Services, 59 Conn. App. 194, 200, ___ A.2d ___ (2000).
These rules apply in the context of an application for a prejudgment remedy. See Savin v. National Personnel Consultants, Inc.,4 Conn. App. 563, 495 A.2d 1109 (1985). The court may not premise a prejudgment remedy on a claim which was not part of the operative complaint at the time of the hearing. Id., 565-567.
Therefore, as to the breach of contract claim, under the first count, probable cause may be found only against Prestige Kitchens, LLC, not against Granquist as an individual. The result must be the same for the second count, as to negligence, since its allegations concerning breach of duty arise from the contract.
The plaintiff presented credible testimony to the effect that the contract had been breached since Prestige Kitchens' work was defective and incomplete. Dornfried has entered into a contract with another contractor, in order to rectify the situation, for the sum of $20,785. This provides a measure of the principal amount of damages which the plaintiff is likely to recover. Since prejudgment interest may be awarded, there is probable cause to believe that plaintiff will recover judgment in the amount of $25,000 against Prestige Kitchens. Accordingly, the court authorizes a prejudgment remedy in that amount against that defendant.
 II. Fraud and CUTPA
"The elements comprising an action in fraud or fraudulent misrepresentation are that: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." (Internal quotation marks omitted.) Statewide GrievanceCommittee v. Egbarin, 61 Conn. App. 445, 454, ___ A.2d ___ (2001). "The party asserting such a cause of action must prove the existence of the first three of these elements by a standard higher than the usual fair preponderance of the evidence, which higher standard we have described as clear and satisfactory or clear, precise and unequivocal." (Internal quotation marks omitted.) Barbara Weisman, Trustee v. Kaspar,233 Conn. 531, 539, 661 A.2d 530 (1995); see Citino v. RedevelopmentAgency, 51 Conn. App. 262, 270, 721 A.2d 1197 (1998) ("clear and convincing" is the standard of proof). This standard must also be used to measure the proof presented at a prejudgment remedy hearing. See CommonCondominium Associations v. Common Assoc., 192 Conn. 150, 153-154,470 A.2d 699 (1984). CT Page 3551
As noted above, the plaintiff's fraud claim is premised on the allegation that the defendants knew or should have known, when they made representations about the quality of materials that would be supplied and about the quality of the workmanship that would be provided, that they could not supply or provide the same. "A representation about a promise to do something in the future, when linked with a present intention not to do it, is a false representation." Kavarco v. T.J.E., 2 Conn. App. 294,300, 478 A.2d 257 (1984).
The evidence at the hearing was focused on the materials and workmanship which were eventually provided, not on the defendants' knowledge at the contract's inception. In effect, the plaintiff asks the court to infer, based on the results, that there was fraud at the beginning. Such an inference is not warranted by the proof presented. At this stage of the proceeding, the evidence which was offered is insufficient to meet the standard of proof required in order to demonstrate that there is probable cause to believe that the plaintiff will recover a judgment based on fraud.
In his fourth or CUTPA count, the plaintiff essentially pleads again the same facts as he utilized to support the third or fraud count. As a result, he has assumed the burden of proving those facts to support his CUTPA claim as well. See Janow v. Ansonia, 11 Conn. App. 1, 8, 525 A.2d 966
(1987). Accordingly, for the reasons stated above concerning the third count, plaintiff has not shown the requisite probable cause to believe that a judgment will be rendered in his favor based on CUTPA.
 CONCLUSION
For the foregoing reasons, the plaintiff's motion for prejudgment remedy is granted in the amount of $25,000 as to Prestige Kitchens, LLC only. The motion is denied as to the defendant Michael Granquist. It is so ordered.
BY THE COURT,
ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT